# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| **OSCAR MARTINEZ CARRILLO,** | § | |
| | § | |
| *Petitioner*, | § | |
| **v.** | § | |
| | § | |
| **FIELD OFFICE DIRECTOR,** | § | |
| Enforcement and Removal Operations, Camp | § | |
| East Montana Detention Facility, El Paso, | § | **EP-26-CV-00023-DCG** |
| Texas Field Office; **TODD M. LYONS,** | § | |
| Acting Director, U.S. Immigration and | § | |
| Customs Enforcement; **KRISTI NOEM,** | § | |
| Secretary, U.S. Department of Homeland | § | |
| Security; and **PAM BONDI,** U.S. Attorney | § | |
| General, | § | |
| *Respondents*. | § | |

## ORDER TO SHOW CAUSE

Petitioner Oscar Martinez Carrillo ("Petitioner") challenges his detention pursuant to 28

U.S.C. § 2241.[1] The issues raised in his Petition require an answer from Respondents. The Court

therefore **ORDERS** Respondents to show cause why the Court should not grant a writ of habeas

corpus.

## I.      Background

For the purposes of this Order only, the Court presumes the following facts are true.

Petitioner is a native and citizen of Mexico.[2] In 2001, he entered the United States without

---

[1] *See generally* Pet., ECF No. 1.

[2] *See id.* at 4.

All page citations in this Order refer to the page numbers assigned by the Court's CM/ECF system, rather than the internal pagination of the cited document.

inspection and has continuously resided in the country ever since.[3] In 2016, Petitioner applied for asylum, withholding of removal, and refugee status.[4] Later that year, Petitioner received a Notice to Appear ("NTA") charging him as removable.[5] Petitioner applied for the cancellation of his removal and adjustment of his status.[6] In 2022, an Immigration Judge ("IJ") reserved ruling on his application until a "visa number became available."[7] Petitioner remains "in the queue awaiting the availability of a visa number."[8]

On an unknown date, Petitioner was detained in Red Bank, New Jersey, after being criminally charged with simple assault and resisting arrest, but these charges were dismissed and expunged.[9] Petitioner was released from criminal detention on November 13, 2025, and immediately redetained by United States Immigration and Customs Enforcement ("ICE").[10]

---

[3] *Id.* at 4.

[4] *Id.*

[5] *Id.* at 10-11 (stating that the NTA charged him under the Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled *or* under INA § 212(a)(7)(A)(i)(1) as an immigrant who lacked a suitable travel document at the time of application for admission).

[6] *Id.* at 4–5.

[7] *Id.* at 5.

[8] *Id.*

[9] *Id.* at 4. Petitioner also notes that he pleaded guilty to simple assault in 2003 and to driving under the influence in 2023. *Id.* at 6.

[10] *Id.* at 4

Petitioner is now detained at Camp East Montana in El Paso, Texas.[11] He is scheduled to appear before an IJ in El Paso on February 12, 2026.[12]

On January 8, 2026, Petitioner filed the instant Petition for Writ of Habeas Corpus.[13] He argues that Respondents have misapplied the mandatory detention provision at 8 U.S.C. § 1225(b)(2)(A), thus violating (1) the Due Process Clause of the Fifth Amendment; (2) the Immigration and Nationality Act ("INA"); and (3) the declaratory judgment in *Maldonado Bautista*.[14] Petitioner asks the Court issue a Temporary Restraining Order ("TRO") to prevent Respondents from removing or transferring him, order his immediate release or a bond hearing, issue further declaratory judgment, and award attorney's fees and costs.[15]

## II.    Discussion

### A.    Habeas Corpus Petition

Under 28 U.S.C. § 2241, a detainee may challenge his confinement as unlawful by filing a habeas corpus petition.[16] The Rules Governing Section 2254 Cases in the United States District

---

[11] *Id.* at 5.

[12] *Id.*

[13] *See generally id.*

[14] *Id.* at 17–19. Petitioner states that he belongs to the nationwide class certified by the U.S. District Court for the Central District of California and thus, "[a]s a member of the Bond Eligible Class, Petitioner is entitled to consideration for release on bond under 8 U.S.C. § 1226(a)." *Id.* at 18–19 (citing *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025)).

[15] *Id.* at 19–20.

[16] *See* 28 U.S.C. § 2241(c) (requiring petitioner to show that he is "in custody in violation of the Constitution or laws or treaties of the United States"); *see also Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").

Courts ("Habeas Rules") specify what the Court must do after receiving such a petition. Although the Habeas Rules govern petitions filed under 28 U.S.C. § 2254, they also apply to petitions filed pursuant to § 2241.[17]

Habeas Rule 4 directs that the Court "examine" a petition and "dismiss" it "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to any relief."[18] If dismissal is not appropriate, the Court shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted."[19] Should the petition survive prescreening, "the judge *must* order the respondent[s] to file an answer, motion, or other response within a fixed time, or to take other action the judge may order."[20] 28 U.S.C. § 2243 requires that the response "be returned within three days" or "not exceeding twenty days."[21]

---

[17] *See* Rules Governing Section 2254 Cases ("Habeas Rules"), Rule 1(a) ("These rules govern a petition for a writ of habeas corpus filed in a United States district court under 28 U.S.C. § 2254"); *see also* Habeas Rule 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition not covered by Rule 1(a)").

*See also Perez v. Hijar*, No. 22–50904, 2023 WL 4559366, at *1 (5th Cir. July 17, 2023) ("Rule 1(b) of the rules governing § 2254 cases articulates that these rules may apply to other habeas corpus petitions as well").

[18] *See* Habeas Rule 4; *see also Kiser v. Johnson*, 163 F.3d 326, 328 (5th Cir. 1999) ("The district court has the power under Rule 4 to examine and dismiss frivolous habeas petitions prior to any answer or other pleading by the state.").

[19] 28 U.S.C. § 2243.

[20] Habeas Rule 4; *see also* 28 U.S.C. § 2243 (requiring the district court to issue the order "forthwith"); *Simpson v. Ortiz*, 995 F.2d 606, 609 (5th Cir. 1993) (concluding that a district court acted "forthwith" by issuing a show cause order "just twenty-one days after [the] petition was filed").

[21] 28 U.S.C. § 2243.

However, courts have "discretionary authority" to alter the "strict time limits prescribed by §
2243."[22]

Having preliminarily examined the foregoing petition, the Court concludes that (1)
summary dismissal is not appropriate, and (2) an extension of the default response time is not
warranted. The Court will therefore order Respondents to show cause within three days why the
Court should not grant the Petition. If necessary, the Court will order a hearing or additional
briefing after reviewing the parties' filings.

### B.    Motion for Temporary Restraining Order

Petitioner separately moved for a TRO or Preliminary Injunction ("PI") requiring his
immediate release or a bond hearing, as well as preventing Respondents from removing or
transferring Petitioner while he remains in detention.[23]

The purpose of a TRO "is to preserve the status quo and prevent irreparable injury until
the court renders a decision on the merits."[24] The Court may *only* issue a TRO without notice to
the adverse party if the movant (1) demonstrates "specific facts" that "clearly show that
immediate and irreparable injury, loss, or damage will result to the movant before the adverse
party can be heard in opposition;" and (2) "the movant's attorney certifies in writing any efforts
made to give notice and the reasons why it should not be required."[25]

---

[22] *See, e.g.*, *Y.V.S. v. Wolf*, No. 3:20-CV-228-DCG, 2020 WL 4926545, at *1 (W.D. Tex. Aug. 21, 2020) (collecting cases) (reasoning that because Congress approved the Habeas Rules in 1976 and enacted § 2243 in 1948, the former governs the district court's authority to set response deadlines).

[23] *See* Mot. TRO, ECF No. 3, at 2, 10.

[24] *Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 WL 486610, at *4 (5th Cir. Feb. 17, 2022) (citing *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974)).

[25] FED. R. CIV. P. 65(b)(1). By contrast, "[t]he court may issue a preliminary injunction only on notice to the adverse party." FED. R. CIV. P. 65(a)(1).

Here, the relevant status quo is that Petitioner is detained at Camp East Montana in El Paso, Texas.[26] Petitioner asks the Court to prevent his removal and to order his "immediate release from immigration custody," or in the alternative, "an expedited, constitutionally adequate bond hearing before a neutral decision-maker with authority to consider all conditions of release."[27] Although Petitioner argues that his ongoing detention will result in "irreparable harm,"[28] he does not clearly show (or address) whether this harm will occur *before* Respondents can be heard, nor has his attorney certified any efforts to give notice to Respondents or the reasons why notice should not be required.[29]

The Court therefore denies Petitioner's Emergency Motion for Immediate Release (ECF No. 5) and will rule on the merits of the Petition after Respondents have been given the opportunity to respond.

### C.    Prevention of Transfer Out of the Western District of Texas or Removal from the United States

As explained above, Petitioner asks the Court to prevent Respondents from transferring or removing him.[30] In support, he argues that if he is transferred or removed without "a full adjudication of his rights," he will endure a loss of liberty, lack of meaningful review, family hardship, and a deprivation of access to counsel.[31] Many courts, including those in this Division,

---

[26] Mot. TRO at 3.

[27] *Id.* at 14.

[28] *Id.* at 8.

[29] *See supra* note 25 and accompanying text.

[30] Mot. TRO at 10.

[31] *Id.*

have granted a limited form of this relief pursuant to their "inherent authority to preserve and assess [their] own jurisdiction, *not* as a TRO."[32] This authority is particularly relevant in the immigration habeas context, where petitioners seeking relief from detention may be transferred or removed before their cases are fully considered.[33]

Accordingly, Respondents may not transfer Petitioner out of the El Paso Division of the Western District of Texas or remove him from the country during the pendency of this case or

---

[32] *See, e.g.*, Order, *Quizhpi Caguana v. Noem*, No. 3:25-CV-534-KC (W.D. Tex. Nov. 12, 2025), ECF No. 3 (citing *Sepulveda Ayala v. Noem*, No. 25-CV-5185, 2025 WL 1207655, at *4 (W.D. Wash. Apr. 26, 2025)).

*See also* Order, *Machuca-Mejia v. Ybarra*, 3:25-CV-00641-DCG (W.D. Tex. Dec. 15, 2025), ECF No. 4 (ordering Respondents not to transfer or remove Petitioner during the pendency of the case or until further order by the Court).

*See also United States v. United Mine Workers of Am.*, 330 U.S. 258, 293 (1947) ("[T]he District Court had the power to preserve existing conditions while it was determining its own authority to grant injunctive relief."); *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978) ("[T]he ["inherent powers"] doctrine is rooted in the notion that a federal court, sitting in equity, possesses all of the common law equity tools of a Chancery Court (subject, of course, to congressional limitation) to process litigation to a just and equitable conclusion."); *Santiago v. Noem*, No. 3:25-CV-361-KC, 2025 WL 2606118, at *2 (W.D. Tex. Sept. 9, 2025) ("The Court finds persuasive the decisions enjoining removal and transfer of petitioners under the Court's inherent power to preserve its ability to hear the case.").

[33] *See, e.g.*, Order, *Pablo Pablo v. Lyons*, No. 3:25-CV-566-DCG (W.D. Tex. Dec. 5, 2025) ("By the time the Court ordered Respondents not to remove [the petitioner], he had arrived in Guatemala City."); Order, *Blandon Raudez v. Bondi*, No. 3:25-CV-493-DB (W.D. Tex. Oct. 30, 2025), ECF No. 11 (admonishing United States Immigration and Customs Enforcement ("ICE") for removing habeas petitioner from El Paso to Mexico "after the Court unequivocally ordered the parties not to do so, and before he could be heard in this Court of law.").

until the Court orders otherwise. This relief is granted *not* as a TRO or protective order, but rather to preserve the Court's jurisdiction and ability to assess the case on its merits.[34]

## III.    Conclusion

For the foregoing reasons, the Court **ORDERS** Respondents to file a response to the "Petition for Writ of Habeas Corpus" (ECF No. 1) by no later than **January 14, 2026**. This response must identify each factual allegation contained in the Petition that Respondents dispute. Petitioner may file a reply within **three days** after Respondents serve their response.[35] If necessary, the Court will order a hearing or additional briefing upon review of the pleadings.

The Court **ORDERS** that Respondents **SHALL NOT** (1) remove or deport Petitioner from the United States, or (2) transfer Petitioner to any facility outside the boundaries of the El Paso Division of the Western District of Texas, until the Court orders otherwise or this case is closed.

The Court **DENIES** Petitioner's Motion for Temporary Restraining Order (ECF No. 3).

The District Clerk shall **SERVE** copies of the "Petition for Writ of Habeas Corpus" (ECF No. 1) and this Order upon Respondents **and** the United States Attorney in El Paso, Texas.[36]

---

[34] *See supra* note 32. The Court also notes that the All Writs Act vests federal courts with the authority to preserve and exercise their limited jurisdiction. *See* 28 U.S.C. § 1651 [hereinafter "All Writs Act"]; *ITT Cmty. Dev. Corp.*, 569 F.2d at 1359 ("The All Writs Act may be said to provide a federal court with those writs necessary to the preservation or exercise of its subject matter jurisdiction. The Act is necessary because federal courts, being courts of limited jurisdiction, would not otherwise possess the tools necessary to implement their jurisdictional grants.").

[35] *See generally* FED. R. CIV. P. 6(a) (providing methods for computing time).

[36] *See* Habeas Rule 4 ("[T]he clerk must serve a copy of the petition and any order on the respondent[s] and on the attorney general or other appropriate officer of the state involved.").

**So ORDERED and SIGNED this 9th day of January 2026.**

**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**